JEFFER MANGELS BUTLER & MITCHELL LLP
MICHAEL J. HASSEN (Bar No. 124823), mjh@jmbm.com
CHRISTOPHER H. DOYLE (Bar No. 190016), chd@jmbm.com
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3813
Telephone:    (415) 398-8080
Facsimile:    (415) 398-5584

Attorneys for Defendant BMW FINANCIAL SERVICES NA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MEMORY APOSTOL,<br><br>         Plaintiff,<br><br>    v.<br><br>BMW FINANCIAL SERVICES NA, LLC, a Delaware Corporation, and DOES 1-10, inclusive,<br><br>         Defendants. | CASE NO.  4:15-cv-5137-JSW<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT BMW FINANCIAL SERVICES NA, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:    April 8, 2016<br>Time:    9:00 a.m.<br>Ctrm:    5, 2nd Floor<br>Judge:   Honorable Jeffrey S. White |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. OVERVIEW OF FACTS AND ARGUMENT ....................................................................3

III. ARGUMENT..........................................................................................................................4

    A. Plaintiff Lacks Standing as She has Received All Relief Afforded Under *Salimi* ............................................................................................................... 4

    B. The CCRAA Claim is Preempted..................................................................... 6

    C. The CCRAA Claim is Time Barred.................................................................. 8

    D. The CCRAA Claim for Relief Fails to State a Claim for 27 Violations ......... 9

IV. CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aguayo v. U.S. Bank*,
    653 F.3d 912 (9th Cir. 2011) ................................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009) ....................................................................................6

*Banga v. Equifax Info. Servs., LLC*,
    473 Fed.Appx. 712 (9th Cir. 2012) ......................................................................................11

*Bank of America v. Lallana*,
    19 Cal.4th 203 (1998) ........................................................................................................3, 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........................................................6

*Breslow v. Prudential-Bache Properties, Inc.*,
    1994 WL 478611 (N.D. Ill. Sept. 1, 1994) ............................................................................5

*Brown v. Ticor Title Ins. Co.*,
    982 F.2d 386 (9th Cir. 1992) .................................................................................................5

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) .................................................................................................5

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................................................5

*Olson v. Six Rivers Nat'l Bank*,
    111 Cal.App.4th 1 (Cal.App. 2013) .......................................................................................9

*Patel v. Albano*,
    1998 WL 726475 (S.D.N.Y. Oct. 13, 1998) ......................................................................2, 6

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
    533 F.3d 162 (3d Cir. 2008) ...............................................................................................2, 6

*State of West Virginia v. Chas. Pfizer & Co.*,
    440 F.2d 1079 (2d Cir. 1971) ................................................................................................5

*Tempelman v. Trans Union, LLC*,
    2015 WL 337651 (D.N.J. Jan. 22, 2015) ..........................................................................9, 10

*Wang v. Asset Acceptance, LLC*,
    681 F.Supp.2d 1143 (N.D. Cal. 2010) ...................................................................................7

# TABLE OF AUTHORITIES
# [CONTINUED]

Page(s)

*West Run Student Housing Associates, LLC v. Huntington Nat. Bank*,
   2012 WL 1739820 (W.D. Pa., May 15, 2012), 712 F.3d 165(3d Cir. 2013) ..............................3, 6

**STATUTES**

15 U.S.C.
   § 1681i(c)..................................................................................................................................10
   § 1681s-2(b)...............................................................................................................................7
   § 1681s-2(b)(1) .........................................................................................................................7

California Code of Civil Procedure
   § 1785.25(a).....................................................................................................................6, 7, 10
   § 1785.25(c)........................................................................................................................3, 6, 7
   § 2983.2 ......................................................................................................................................3
   § 2983.8 ......................................................................................................................................3
   § 3527 .......................................................................................................................................11

Federal Rules of Civil Procedure
   Rule 11.......................................................................................................................................1
   Rule 23(b)(2) .............................................................................................................................5
   Rule 23(b)(3) .............................................................................................................................5

PRINTED ON RECYCLED PAPER
SF 2107136v2

Defendant BMW Financial Services NA, LLC ("Defendant") submits this reply brief in support of its Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion").

# I. INTRODUCTION

Plaintiff's opposition to the motion to dismiss is striking for several reasons.

First, despite the fact that the Motion raises on the very first page that the amendment transformed a $6,000 small claims case into a $400,000+ lawsuit, the opposition brief provides no explanation for this event. It is inconceivable that competent counsel would file an original complaint seeking at most $6,000 when he believes the identical set of facts support a damage claim in excess of $400,000. The only explanation consistent with the original lawsuit having been filed in accordance with Rule 11, is that this lawsuit *does* involve only a few thousand dollars, and the amended complaint reflects an attempt to improperly plead around the limitations on discovery disclosed to plaintiff's counsel by the Court.

Second, plaintiff cannot seem to decide whether she is or is not part of the *Salimi* class. On the one hand, she insists that she is part of the class. Her complaint is rife with references to the *Salimi* case, and even her opposition brief discusses at length the central role of the *Salimi* case in the manufacturing of her claim. All of these facts support her repeated admission that she is a member of the *Salimi* class. Tellingly, plaintiff does not deny that she has received all benefits to which she would have been entitled to recover under the *Salimi* settlement. Therefore, if she is a member of the *Salimi* class, then she lacks standing to bring this action and has released all claims against defendant arising out of the underlying debt.

Plaintiff contradictorily insists that, because she did not receive notice, she is not part of the class. However, if plaintiff is not part of the class then her repeated references to the *Salimi* action and settlement are of no avail and must be stricken from the complaint. Plaintiff cannot argue that she is *not* a member of the *Salimi* class, but then use the settlement therein as proof that *her* NOI violates Rees-Levering. If she is not a member of the *Salimi* class then there has been no adjudication as to the collectability of plaintiff's debt.

Accordingly, plaintiff cannot bring an action based on the *assumption* that the debt reported by Defendant to the credit reporting agencies was not collectable. No such judicial determination

1  has been made. Plaintiff must first prosecute an action to establish the invalidity of that debt under
2  Rees-Levering, but the present lawsuit does not include such a claim and the time period for
3  bringing such an action has long since passed.

4  Moreover, a judicial finding of a violation of Rees-Levering is not a finding that the debt
5  was not valid or a finding that the debt did not exist. Rather, such a finding simply implicates the
6  statutory punishment, which forbids the creditor from collecting amounts otherwise due on the debt.
7  The gravamen of plaintiff's complaint thus fails to state a cause of action, as a finding that a debt is
8  not collectable under Rees-Levering does not mean that the consumer did not default on a financial
9  obligation. In essence, plaintiff complains that her credit was "damaged" because prospective
10 creditors received an *accurate* picture of her creditworthiness. The debt may not be collectable (if a
11 court were to determine that the NOI sent to plaintiff violates Rees-Levering), but that does not
12 mean the debt does not exist.

13 Third, plaintiff ignores entirely the fact that the *Salimi* settlement and judgment anticipated
14 that certain class members may not receive the benefits to which they were entitled thereunder, and
15 expressly provided for the sole remedy available to such class members. So if plaintiff falls within
16 the literal definition of the *Salimi* class, as she insists, then her sole remedy is to notify Defendant of
17 its failure to update her credit report, which it has done. Plaintiff's argument and case authority are
18 inapposite as they did not involve settlement agreements that provided a remedy to class members
19 in the event of a perceived breach by the defendant.

20 Finally, as noted in the moving papers, plaintiff apparently believes she can avoid dismissal
21 by simply omitting damaging admissions from her amended complaint. Federal law holds
22 otherwise. In considering a motion to dismiss an amended complaint, the district court "read[s] that
23 complaint in light of plaintiff's original complaint … filed in this Court," *Patel v. Albano*, 1998 WL
24 726475, at *2 (S.D.N.Y. Oct. 13, 1998); *see also Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533
25 F.3d 162, 181 (3d Cir. 2008) (affirming district court denial of leave to file amended complaint that
26 omitted admissions in operative complaint because plaintiff could not "erase[]" the admissions in
27 her first amended complaint"). "Allegations in a complaint are binding admissions; a party is
28 bound by the admissions made in his original complaint and cannot simply erase these details by

1   omitting them from his amended complaint." *West Run Student Housing Associates, LLC v.*

2   *Huntington Nat. Bank*, 2012 WL 1739820, at *6 (W.D. Pa., May 15, 2012), *aff'd in part, vacated in*

3   *part, remanded*, 712 F.3d 165(3d Cir. 2013) (citations omitted).

4         Defendant's analysis of the allegations in the original complaint establishes that plaintiff's

5   claim under the CCRAA is preempted by federal law.  Plaintiff's effort to ignore any discussion of

6   the impact of the allegations in her original complaint on the grounds that the amended complaint

7   "contains no claims for violations of the federal Fair Credit Report Act" and because she does not

8   openly admit that her CCRAA claim falls under §1785.25(c), Pl. Opp., at 11, misses the point.

9         Accordingly, Defendant respectfully requests that the amended complaint be dismissed.

10  **II.     OVERVIEW OF FACTS AND ARGUMENT**

11        Rees-Levering provides that if a consumer defaults on his or her vehicle payments and the

12  vehicle is repossessed, then the lender's Notice of Intent to Sell ("NOI") must provide certain

13  information.  Cal. Civ. Code, § 2983.2.  If the NOI is defective, then the lender is not allowed to

14  retain any sums received from the consumer following the NOI and is not allowed to pursue further

15  collection efforts.  *Id.*  **Plaintiff admits that this is the only punishment that flows from a violation**

16  **of Rees-Levering: if the creditor violates the statute, "he may not have his deficiency judgment."**

17  Pl. Opp., at 3 (quoting *Bank of America v. Lallana*, 19 Cal.4th 203, 215 (1998) (italics added).

18        However, Rees-Levering is not self-executing.  A consumer may not simply refuse to pay

19  her debt on the grounds that she believes the NOI violates the statute.  A judicial determination to

20  that effect is required.  Once such a judicial determination is made, California law prohibits the

21  creditor from recovering amounts that remain due and owing on the debt.  ***This is not a finding that***

22  ***the debt did not lawfully exist; Rees-Levering does not provide for deletion of the trade line***

23  ***associated with the NOI, nor does it require the lender to mislead prospective future creditors as***

24  ***to the creditworthiness of the consumer.***  Rather, a violation of Rees-Levering punishes the creditor

25  who issued the defective NOI by barring it from recovering amounts otherwise due on the debt.

26        The California Supreme Court has explained that a violation of Rees-Levering precludes the

27  creditor from obtaining a deficiency judgment, *Bank of America v. Lallana*, 19 Cal.4th 203, 215

28  (Cal. 1998), which tracks the language of the statute, Cal. Civ. Code, § 2983.8 (providing "no

deficiency judgment shall lie" in the event of a violation). Nothing in the statute or in the case law holds that a violation of Rees-Levering also punishes innocent prospective future creditors by misleading them into believing that the consumer is a good credit risk.

*A violation of Rees-Levering does not mean that the debtor does not <u>owe</u> the money; it means only that the debt may not be <u>collected</u>.* If plaintiff's claim were correct that she "actually owed *zero* to BMW Financial," Pl. Opp., at 3, then *Lallana* would have held that there is no money owed to the creditor rather than holding that the creditor may not obtain a deficiency judgment, and the statute would provide that "no *debt* shall exist" or "no *deficiency* shall exist" rather than "no *deficiency judgment* shall lie." Ninth Circuit authority confirms this fact, holding that Rees-Levering is not preempted by the National Bank Act because it is a statute concerning a creditor's "right to collect debts." *See Aguayo v. U.S. Bank*, 653 F.3d 912, 923 (9th Cir. 2011). If there is no debt (i.e., "zero" money owed), then the "right to collect debts" would not be implicated. It is precisely because a debt exists that the "right to collect debts" is at play – a right that the California legislature, through Rees-Levering, saw fit to prohibit in the event of a violation of the statute.

The allegedly defective NOI was sent to plaintiff in July of 2011. Complaint, ¶ 1. Plaintiff admits that Defendant began reporting her $10,000 debt in August of 2011, Pl. Opp., at 3. The statute of limitations began to run at that time.

Finally, the settlement agreement in *Salimi* expressly provides that "BMW FS denies the material allegations made in the Action and denies any and all liability with respect to any and all facts and claims alleged in the Action and further denies that the Plaintiff Settlement Class has suffered any damage," *Salimi*, Docket Entry #60-1, at 2, and provides further that, "Neither this Agreement nor any document referred to herein nor any action taken to carry out this Agreement is, or may be construed as, or may be used as, an admission or concession by or against BMW FS on any point of fact or law, or of any alleged fault, wrongdoing, or liability whatsoever," *id.*, at ¶ 7.02.

### III. ARGUMENT

#### A. Plaintiff Lacks Standing As She Has Received All Relief Afforded Under *Salimi*

Plaintiff argues she is not bound by the *Salimi* settlement because she did not receive notice of it. She is wrong.

1  Not a single class member objected to the *Salimi* settlement or sought to opt out of the class
2  because it afforded them all relief allowed by statute. Tellingly, plaintiff does not allege that she
3  would have objected to the settlement or opted out of it had she received notice thereof, nor could
4  she make such an argument while being represented by counsel for the *Salimi* class.

5  Accordingly, due process is not at issue as plaintiff could not have recovered more had she
6  pursued her own action. She did not "give up" anything in return for the release she gave.

7  Moreover, the settlement approved by the Court anticipated that certain class members may
8  not receive the corrective credit reporting agency updates provided for by the settlement, which is
9  the only act with which plaintiff takes exception. That error, however caused, is anticipated by the
10 settlement agreement and the sole remedy is accounted for: Defendant is to be given written notice
11 of the perceived error in the credit report, and Defendant is to then reinstruct the CRAs to update the
12 trade line consistent with the terms of the settlement. All of that relief has been provided, so there is
13 no longer a case or controversy.

14 Contrary to plaintiff's argument, a class action settlement may bind absent class members
15 even if they did not receive notice. *See State of West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079
16 (2d Cir. 1971); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975). *Brown v. Ticor*
17 *Title Ins. Co.*, 982 F.2d 386, 389 (9th Cir. 1992) is inapposite as that case involved a Rule 23(b)(2)
18 class, for which no right to opt out exists and for which no release should be obtained. The Ninth
19 Circuit properly held that class members cannot be required to give a defendant a release as part of
20 a Rule 23(b)(2) class because notice to the class is not required and there is no opportunity for
21 anyone in the class to opt out. The *Salimi* settlement was obtained under Rule 23(b)(3).

22 Further, if plaintiff is a class member as she insists, then her remedy is to move the Court to
23 set aside the final order of settlement and reopen the proceedings. *See e.g., Hanlon v. Chrysler*
24 *Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Breslow v. Prudential-Bache Properties, Inc.*, 1994
25 WL 478611, at *1 (N.D. Ill. Sept. 1, 1994). That is why this Court retained continuing jurisdiction
26 over that case. Plaintiff's argument to the contrary misses the point, as it claims only that she may
27 collaterally attack the *Salimi* judgment. In point of fact, however, plaintiff seeks not to ***attack*** that
28 judgment but to use it as a sword against Defendant. As noted above, plaintiff is not seeking to

1  pursue her own rights under Rees-Levering or to challenge any aspect of the *Salimi* judgment. So

2  her entire argument concerning her right to collaterally attack the judgment is moot. Pl. Opp., at 8-9.

3  Alternatively, if plaintiff is *not* a member of the *Salimi* class, then she must bring an action

4  *under Rees-Levering* to bar Defendant from pursuing a deficiency judgment against her. Unless

5  and until she prevails in such a lawsuit, there is finding that her NOI violates California law and the

6  foundation of her present lawsuit crumbles away beneath her. The alleged CCRAA violation (as

7  with the alleged FCRA violation before it) is premised upon the allegation that plaintiff's NOI

8  violated Rees-Levering. Without a judicial determination to that effect, the complaint fails to state a

9  claim under *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) or *Bell Atl. Corp. v. Twombly*,

10 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Without a judicial determination to that

11 effect, her complaint is premised upon a mere "legal conclusion" that the NOI violates California

12 law, not upon the "fact" of such a violation. Plaintiff's lawsuit does not assert a claim under Rees-

13 Levering, which would be necessary in order to establish the foundation of her CCRAA claim. So

14 the complaint fails to state a claim for which relief can be granted under the CCRAA.

15 **B.     The CCRAA Claim is Preempted**

16 Plaintiff argues her CCRAA claim is not preempted because it was not expressly brought

17 under California Civil Code section 1785.25(c). Pl. Opp., at 11. In so doing, plaintiff ignores

18 entirely the allegation in her original complaint that defendant violated the FCRA by failing to

19 properly investigate her dispute with the credit reporting agencies concerning the accuracy of her

20 account. Cmpl., ¶ 14. As a matter of law, Plaintiff cannot erase this "inconvenient" allegation by

21 omitting it from her amended complaint. *Sovereign Bank*, 533 F.3d 162 at 181.

22 In ruling on this motion to dismiss, the Court considers the amended complaint "in light of

23 plaintiff's original complaint," *Patel v. Albano*, 1998 WL 726475, at *2. "***Allegations in a***

24 ***complaint are binding admissions; a party is bound by the admissions made in his original***

25 ***complaint and cannot simply erase these details by omitting them from his amended complaint.***"

26 *West Run Student Housing*, 2012 WL 1739820, at *6 (italics added, citations omitted).

27 Plaintiff's entire argument is that her CCRAA claim purports to be brought under Civil

28 Code section 1785.25(a). End of story. Pl. Opp., at 11:18-23.

1    Plaintiff gives short shrift to this Court's decision in *Wang v. Asset Acceptance, LLC*, 681
2    F.Supp.2d 1143 (N.D. Cal. 2010) – all of a single sentence, Pl. Opp., at 11:24-25 – despite the fact
3    that it is directly on point. There, as here, the plaintiff sought to disguise her CCRAA claim under
4    Civil Code section 1785.25(c) as one under section 1785.25(a) in order to avoid federal preemption.
5    The district court rejected such creative pleading and held that the CCRAA claim was preempted
6    even though on its face it claimed to be brought under section 1785.25(a).

7    *Wang* recognized that even if a claim for relief is entitled as one under subsection (a), "if
8    [plaintiff's] allegations really give rise to a claim under subsection (c), then his cause of action
9    should be dismissed as preempted." *Wang*, at 1147. The Court ultimately found that the CCRAA
10   claim was preempted because it was based on the allegation of a failure to notify the CRAs of a
11   disputed debt, and "[t]his obligation to notify CRAs of disputed debts is clearly and unambiguously
12   addressed by the California legislature in section 1785.25(c) of the CCRAA." *Id.*, at 1147-48.

13   In a vain attempt to overcome dismissal, plaintiff ignores that her original complaint tracked
14   the complaint in *Wang*. Specifically, in her original complaint plaintiff alleged that ***Defendant***
15   ***violated 15 U.S.C. § 1681s-2(b) of the FCRA*** "by, after receiving notice of plaintiff's disputes with
16   regard to the completeness or accuracy of the information provided by defendants, failing to
17   perform the duties imposed by 15 U.S.C. § 1681s-2(b)(1)," Cmpl. ¶ 14. But the *Wang* court found,
18   "Section 1681s-2(b) imposes additional duties on furnishers of information ***that are triggered only***
19   ***when the furnisher receives notice from a CRA that a consumer <u>disputes</u> the information.***"
20   *Wang*, at 1146 (italics added). *Wang* held that "Since subsection (a) does not include an obligation
21   to notify CRAs of disputed debts, Wang cannot rely on that subsection in his second cause of
22   action. Instead, Wang's allegations concerning Asset's misconduct clearly give rise to a cause of
23   action under subsection (c)." *Id.*, at 1148.

24   Similarly here, if the Court reviews plaintiff's original complaint, then it is plain that her
25   CCRAA claim is preempted. Plaintiff admits that the gravamen of her complaint is that Defendant
26   failed to comply with section 1681s-2(b) of the FCRA, which governs and preempts consumer
27   disputes that fall within section 1785.25(c) of the CCRAA. Plaintiff cannot "erase" fact by omitting
28   her FCRA claim and Paragraph 14 of her original complaint from her amended complaint.

Accordingly, plaintiff's CCRAA claim is preempted by federal law and must be dismissed.

### C. The CCRAA Claim is Time Barred

Plaintiff admits that the statute of limitations period on her CCRAA claim is two years, and that it begins to run from when she "knew of, or should have known of" the alleged violation. Pl. Opp., at 12. That date expired long ago.

Plaintiff admitted in her original complaint that Defendant sent her an NOI regarding her account on July 8, 2011, and that when she failed to redeem her vehicle Defendant "then assessed her a deficiency balance of over $10,000." Cmpl., ¶ 1. Plaintiff also admits that Defendant began reporting her $10,000 debt in August of 2011. Pl. Opp., at 3.

Federal law requires that consumers be provided one free credit report each year, because in a world where data breaches and identity theft permeates the news, a reasonable consumer is expected to check their credit report at least once a year.

A simple Google search for an answer to the question, "How often should I check my credit report?" confirms this. *See, e.g.,* AboutMoney.com, "How often should I check my credit report?" credit.about.com/od/creditreportfaq/f/checkreport.htm ("***Your credit report has too much impact on your life for you to neglect it for months or years at a time.*** You should check your credit report *at least once a year* to make sure your identity has not been compromised."); MyBank Tracker.com, "How Often Should I Check My Credit Report?" www.mybanktracker.com/news/ how-often-should-i-check-my-credit-report/ (recommending "*three times a year, every four months*"); Nolo.com, "How Often Should I Check My Credit Report?" http://www.nolo.com/legal-encyclopedia/how-often-should-i-check-my-credit-report.html ("You should check them once per year, and more in certain situations."); Credit.com, "How Often Should I Check My Credit?" http://blog.credit.com/2015/04/how-often-should-i-check-my-credit-114559/ ("checking annually seems reasonable unless you have a specific reason for reviewing it more often").

The Court need not determine the precise date plaintiff learned of the manner in which Defendant was reporting her trade line. Because plaintiff should have checked her credit report at least once a year, she knew *or should have known* of the trade line report no later than August of 2012.

1    Plaintiff filed this lawsuit on November 9, 2015 – at least 39 months after the date she knew
2    ***or should have known*** of the report.

3    Plaintiff's argument that the alleged CCRAA violation "first occurred in November, 2013, is
4    a non sequitur.  She calculates that date by choosing the month after the amended complaint in the
5    *Salimi* lawsuit was filed.  Pl. Opp., at p. 3:21-27.  That date means nothing.  The mere filing of a
6    complaint alleging a violation of Rees-Levering does not constitute legal notice to Defendant that
7    the NOI it sent to plaintiff violated the statute.  Indeed, a judicial determination that Defendant
8    violated Rees-Levering never has been made.  Moreover, plaintiff admits that Defendant reported
9    the trade line in the identical fashion from August of 2011 through December of 2015.  Thus, either
10   the violation first occurred in August of 2011, or it has not occurred at all.

11   Accordingly, plaintiff's CCRAA claim is time-barred.

12   **D.    The CCRAA Claim for Relief Fails to State a Claim for 27 Violations**

13   Plaintiff argues that reporting a single event multiple times gives rise to multiple violations
14   of the CCRAA.  None of the authorities cited by plaintiff are remotely on point.

15   Defendant cited to *Olson v. Six Rivers Nat'l Bank*, 111 Cal.App.4th 1, 12 (Cal.App. 2013),
16   which held that because the CCRAA "is substantially based on the Federal Fair Credit Reporting
17   Act, judicial interpretation of the federal provisions is persuasive authority and entitled to
18   substantial weight when interpreting the California provisions."  Plaintiff dismisses *Olson* stating
19   that, while "[t]he FCRA may provide useful guidance in interpreting *other* part of the CCRAA
20   which have identical provisions to the federal scheme [citation], … the FCRA is too fundamentally
21   different in its structure to be persuasive in interpreting the punitive damages section of the
22   CCRAA."  Pl. Opp., at 16.

23   This argument is nonsensical.  Defendant cited *Olson* not for its impact on the punitive
24   damage analysis, but for its impact on what constitutes a violation.  In that regard, the language of
25   the FCRA and the CCRAA parallel one another.

26   Under *Tempelman v. Trans Union, LLC*, 2015 WL 337651, *5 (D.N.J. Jan. 22, 2015), where
27   the district court struck 25 claims for relief as duplicative of the two different transactions at issue,
28   the question was "What constitutes a violation of the FCRA?"  The district court rejected plaintiff's

1  argument that issuing repeated monthly reports concerning the same trade line constituted separate
2  violations of the FCRA.

3  In sum, California Civil Code section 1785.25(a) prohibits furnishing incomplete or
4  inaccurate information concerning a consumer "on a *specific* transaction or experience" (italics
5  added). Here, the *specific* transaction underlying plaintiff's CCRAA claim is the trade line
6  concerning Defendant's report "that plaintiff owed approximately $10,000 for a deficiency balance
7  which had been 'charged off.'" First. Am. Cmpl., at 2:6-7. As the New Jersey federal court held in
8  addressing an identical claim under the FCRA, seeking to recover damages for each monthly
9  violation of the same report is duplicative because "Section 1681i(c) does not provide consumers
10 with a new and distinct cause of action for each month in which the CRA does not note a dispute."
11 *Tempelman*, 2015 WL 337651 at *5 (striking 25 claims for relief as duplicative of the two different
12 transactions at issue).

13 Plaintiff blatantly misstates the holding of *Tempelman*, which flatly rejected the very effort
14 plaintiff advances here. The second violation permitted to be asserted by the *Tempelman* court
15 involved a separate transaction and a separate report; the court tossed out the 25 other claims – each
16 premised on the issuance of a new trade line report concerning a previously reported trade line – as
17 duplicative.

18 Similarly here, there is but *one* specific transaction at issue, as conceded in plaintiff's
19 original complaint seeking damages for a *single* violation of the CCRAA. *See* Cmpl., ¶ 22. Again,
20 it bears noting that plaintiff's counsel filed the original complaint alleging but a single violation of
21 the FCRA and a single violation of the CCRAA. It was only after the Court advised counsel that
22 wide-ranging discovery would not be permitted given the limited amount of damages at issue that
23 plaintiff's counsel had an epiphany and realized that there were actually 27 separate violations of
24 the CCRAA. Such gamesmanship may work in state court, but it has no place in federal court.

25 Plaintiff also ignores the fact that if her reading of the statute is correct, then the statute of
26 limitations on an FCRA or CCRAA claim would never expire as a "new" claim would arise each
27 and every month. Plaintiff does not deny that there is no case or secondary authority supporting
28 such an interpretation of the statute, and does not deny *or even discuss* the Ninth Circuit authority

to the contrary, *Banga v. Equifax Info. Servs., LLC*, 473 Fed.Appx. 712, 713 (9th Cir. 2012), which affirmed a district court order granting summary judgment on FCRA and CCRAA claims.

Finally, we note that under plaintiff's interpretation of the statute, a consumer may review his or her credit report, notice the CCRAA violation, and then sit back and say nothing, accumulating damages on a monthly basis until they decide to file suit. That cannot be the law. It is a maxim of jurisprudence that "The law helps the vigilant, before those who sleep on their rights." Cal. Civ. Code, § 3527.

Defendant urges the Court to reject plaintiff's statutory interpretation, which would limit the vigilant consumer who reviews her credit reports monthly and immediately take steps to prevent inaccurate reports to a single "month's" damages arising from a single violation tied to a single report, but rewards the inattentiveness of a consumer who does nothing to protect her credit with 27 months of statutory damages. The California legislature could not have intended such an absurd result, and the statutory language does not support such a construction.

Accordingly, at the very least, the motion to dismiss should be granted for failure to state 27 separate violations of the CCRAA, and plaintiff directed to file an amended complaint that sets forth but a single alleged violation, consistent with her original complaint.

## IV. CONCLUSION

For the reasons set forth in Defendant's moving papers and above, Defendant respectfully submits that the motion to dismiss should be granted without leave to amend.

DATED: March 25, 2016           JEFFER MANGELS BUTLER & MITCHELL LLP
                                MICHAEL J. HASSEN
                                CHRISTOPHER H. DOYLE


                                By: /s/ Michael J. Hassen
                                        MICHAEL J. HASSEN
                                Attorneys for Defendant BMW FINANCIAL
                                SERVICES NA, LLC

PRINTED ON RECYCLED PAPER
SF 2107136v2